Eric L. **SONMORE** and Jennifer M. Rodine, individually, and on behalf of all others similarly situated, Plaintiffs,

v.

**CHECKRITE RECOVERY SERVICES, INC.,** a Georgia corporation, d/b/a CheckRite, Jon R. Hawks, Ltd., and Jon R. Hawks, an individual, Defendants.

No. 99 CIV 2039 DDA/FLN.

United States District Court, D. Minnesota.

Aug. 6, 2001.

## ORDER

ALSOP, Senior District Judge.

Plaintiffs Eric L. Sonmore ("Sonmore") and Jennifer M. Rodine ("Rodine") filed suit in this Court alleging that Defendant, Jon R. Hawks, Ltd. ("Hawks, Ltd."), Defendant Jon R. Hawks ("Jon Hawks"), and Defendant CheckRite Recovery Services, Inc. ("Check-Rite"), sometimes collectively referred to as "Defendants," violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). This matter comes before the Court on Plaintiffs' motion for an Order certifying a class of similarly situated consumers in relation to Plaintiffs' claims against Hawks, Ltd. and Jon Hawks, sometimes collectively referred to as "Defendants Hawks." For the reasons stated below, the Court will deny Plaintiffs' motion for class certification.

## I. BACKGROUND

Because the facts are more fully laid out in the Court's previous Orders relating to this matter, they will be discussed only briefly in this Order. Hawks, Ltd. is a Minnesota corporation and Jon Hawks, an attorney, is its sole officer and shareholder. Hawks, Ltd. acts as a debt collector for CheckRite. Defendants Hawks and CheckRite regularly send debt collection form letters to debtors and are debt collectors under 15 U.S.C. § 1692a(6). Plaintiffs allege that Defendants' respective debt collection letters violate the FDCPA in various ways.

This suit stems specifically from separate collection letters Defendants sent to each Plaintiff to collect on Plaintiffs' dishonored checks that were written for their personal use: a two dollar check written by Sonmore to purchase gasoline and a thirty dollar check written by Rodine to purchase food at a restaurant. The checks were dishonored because Plaintiffs had insufficient funds to cover the amounts of the checks in their respective checking accounts.

When Plaintiffs failed to pay the amounts CheckRite[1] alleged they owed, CheckRite referred collection of Plaintiffs' dishonored

Beeler, Schad & Diamond, P.C., by Michael S. Hilicki, Chicago, Illinois, and Michael G. Phillips, St. Louis Park, Minnesota, appeared on behalf of Plaintiffs.

Bassford, Lockhart, Truesdell & Briggs, P.A., by Michael Klutho, Minneapolis, Minnesota, appeared on behalf of Defendants.

---

1. Plaintiffs and CheckRite have entered into a settlement agreement, which has not yet been presented to the Court.

checks to Defendants Hawks. Defendants Hawks sent both Plaintiffs a substantially identical letter. Plaintiffs contend that the letters violate the FDCPA because in sending the mass-generated form letters, Defendants Hawks were not actually acting as attorneys and because the letters do not state the amounts Plaintiffs owe CheckRite.[2]

Agreeing that material facts were not in dispute regarding the claims, Plaintiffs and Defendants Hawks filed cross motions for summary judgment on the portions of the Complaint pertaining to Defendants Hawks, Counts IV and V, under Federal Rule of Civil Procedure 56. The Court granted Plaintiffs' motion for summary judgment on these claims finding that, as a matter of law, Defendants Hawks violated the FDCPA.

Plaintiffs moved to certify a class consisting of all consumers that, according to Defendants Hawks' records, reside in the State of Minnesota and within one year from the date of the filing of Plaintiffs' Complaint (November 28, 2000) were sent letters seeking to collect on a debt incurred for a personal, family, or household purpose that were materially identical to the letters Defendants Hawks sent to Plaintiffs. Defendants Hawks oppose Plaintiffs' motion.

## II. DISCUSSION

### A. Standard of Decision

To succeed on a motion for class certification, Plaintiffs bear the burden of proving that they satisfy each of Federal Rule of Civil Procedure 23(a)'s four requirements and one of the three subsections of Rule 23(b). *See* Fed.R.Civ.P. . 23(a) & (b); *see also, e.g., Coleman v. Watt,* 40 F.3d 255, 258 (8th Cir.1994); *Beckmann v. CBS, Inc.,* 192 F.R.D. 608, 612–13 (D.Minn.2000). Plaintiffs seek to certify the class under Rule 23(b)(3).

Under the Federal Rules, district courts have "broad discretion" to determine whether class certification is appropriate. *In re Milk Prods. Antitrust Litig.,* 195 F.3d 430, 436 (8th Cir.1999); *Bishop v. Comm. on*

*Prof'l Ethics,* 686 F.2d 1278, 1287 (8th Cir. 1982); *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir.1998). The Court may certify a class only if, after rigorous analysis, the Court is satisfied that Plaintiffs have met the prerequisites of Rule 23. *See General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The Court's determination must be based on the facts and circumstances of each case, "and must depend upon a careful balance between the convenience of maintaining a class action and the need to guarantee adequate representation to the class members." *Wright v. Stone Container Corp.,* 524 F.2d 1058, 1061 (8th Cir.1975); *see also, e.g., Glenn v. Daddy Rocks, Inc.,* 203 F.R.D. 425 (D.Minn.2001). The Court concludes that certification is not warranted in this case because Plaintiffs have failed to satisfy the requirements of Rules 23(a) and (b)(3).

### B. Federal Rule of Civil Procedure 23(a)

Rule 23(a) of the Federal Rules of Civil Procedure contains four threshold requirements that are applicable to all federal court class actions. Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. . 23(a). "A district court must 'evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative.'" *In re Milk Prods. Antitrust Litig.,* 195 F.3d at 436 (quoting *General Tel. Co.,* 457 U.S. at 160, 102 S.Ct. 2364). "A class representative must be part of the class and possess the same interest

---

**2.** Sonmore previously claimed that Defendants Hawks' letter to him was otherwise deceptive and misleading because it implied that wage garnishment or sheriff's levy were inevitable if a judgment is entered against him. In an Order dated October 25, 2000, the Court granted Defendants Hawks' motion for summary judgment on this claim. Plaintiffs also assert that CheckRite is vicariously liable for Defendants Hawks' violations of the FDCPA.

and suffer the same injury as the class members." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir.1996) (internal quotations and citations omitted).

### 1. Numerosity

█ Rule 23(a)'s first requirement is that joinder of all class members is impracticable because the class is too numerous. *See* Fed.R.Civ.P. 23(a)(1). The Eighth Circuit has not established any rigid rules regarding the necessary size of a class and the question of what makes joinder impracticable depends on the facts of each case. *See Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir.1982); *Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 54 (8th Cir.1977). There are, however, several factors relevant to this inquiry, which include the number of persons in the proposed class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and all other factors relevant to the practicability of joining all class members. *See Paxton*, 688 F.2d at 559–60.

█ Plaintiffs allege and Defendants Hawks do not dispute that Rule 23(a)'s numerosity requirement is met. The Court agrees. Defendants Hawks sent approximately 40,000 debt collection letters to approximately 20,000 persons, which is the estimated size of the proposed class. The Court finds that joinder of all the members of the putative class would be impracticable and that the numerosity requirement is satisfied. *See generally Beckmann*, 192 F.R.D. at 613.

### 2. Commonality

█ Rule 23(a)(2) requires "that there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). "As a general rule, the commonality requirement imposes a very light burden on [a] plaintiff seeking to certify a class and is easily satisfied." *Snell v. Allianz Life Ins. Co. of N. Am.*, No. Civ. 97–2784, 2000 WL 1336640 (D.Minn. Sept. 8, 2000) (quoting *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D.Minn.1999)).

"The rule does not require that every question of law or fact be common to every member of the class, and may be satisfied, for example, 'where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.'" *Paxton*, 688 F.2d at 561 (citations omitted); *see also DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir.1995).

In the present case, it appears that the claims of each potential class member contain common issues of fact or law. All would share the legal questions of whether Defendants Hawks' form letter violates the FDCPA, 15 U.S.C. §§ 1692e(3) and (9) and § 1692(g)(a)(1). Here, Plaintiffs represent that the litigation is focused on the language of Defendants Hawks' letter, taken from the standpoint of the unsophisticated consumer and Defendants Hawks' common course of conduct in relation to Plaintiffs' debts. *See Beckmann*, 192 F.R.D. at 614 ("The commonality requirement is satisfied as long as the members of the class have allegedly been affected by a general policy of the defendant, and the general policy is the focus of the litigation.").

Defendants Hawks allege that the legal and factual issues involved are not common [3] because Plaintiffs wrote their checks with the knowledge that they had insufficient funds and thus are not covered by the FDCPA. In a separate Order responding to the parties' motions for summary judgment, the Court rejects the notion that the FDCPA does not cover the facts presented by this case and, thus, does not find the argument relevant to the question of commonality. Defendants Hawks also argue that issues are uncommon because whether a given class member's damages were proximately caused by Defendants Hawks' letters requires actual testimony. The Court has considered this argument and finds it to be without merit.

---

**3.** Defendants Hawks combined their analysis of commonality with typicality. Although the two Rule 23(a) requirements often merge, *see General Tel. Co.*, 457 U.S. at 158 n. 13, 102 S.Ct. 2364, the Court discusses them separately in this Order, consistent with the law of this Circuit. *See Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562 (8th Cir.1982); *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 829–30 (8th Cir.1977).

Although Plaintiffs bear the burden of demonstrating that there are questions of fact or law common to the class, they need not show that all questions raised by the dispute are common. *See Parkhill v. Minn. Mut. Life Ins. Co.*, 188 F.R.D. 332, 338 (D.Minn.2001); *In re Lutheran Bhd. Variable Ins. Prods. Sales Practices Litig.*, 201 F.R.D. 456 (D.Minn.2001). "Numerous courts have held that a claim that language in a form letter violates a statute presents common issues of law and fact so as to satisfy Rule 23(a)(2)." *Bryant v. Bonded Accounts Service/Check Recovery, Inc.*, No. 00 Civ. 1072, 2000 U.S. Dist. LEXIS 16539, *21 (D.Minn. Oct. 30, 2000). The questions of law and fact involved in this class weave a common thread throughout it. Thus, the commonality requirement is satisfied because the legal and factual issues pervade all the potential class members' claims.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). The rule conditions class certification on the premise "that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Alpern*, 84 F.3d at 1540 (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir.1977)); *see also Wright v. Stone Container Corp.*, 524 F.2d 1058, 1062 (8th Cir.1975). The Eighth Circuit has established a fairly light burden that plaintiffs must bear in order to meet Rule 23's typicality requirement. As the Eighth Circuit explained in *Alpern:*

> The burden is "fairly easily met so long as other class members have claims similar to the named plaintiff." Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory.

*Alpern*, 84 F.3d at 1540 (citations omitted); *see also DeBoer*, 64 F.3d at 1174; *Paxton*, 688 F.2d at 561–62 ("The burden of showing typicality is not an onerous one."); *In re*

*Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig*, 201 F.R.D. 456, 459–60.

Defendants Hawks argue that Plaintiffs do not meet Rule 23's typicality requirement for the same reasons they argue that Plaintiffs fail to meet the rule's commonality requirement: because Plaintiffs "knowingly and unlawfully stole goods" thus vitiating any consensual transaction under the FDCPA and because Plaintiffs did not suffer actual damages. The Court finds these alleged differences to be insufficient to defeat class certification.

As discussed above, Rule 23's typicality requirement dictates that class representatives have the same or similar grievances as the other class members. Here, Plaintiffs' attempt to represent a class of persons who received a debt collection letter that is materially identical to the letters received by Plaintiffs. The legal theories upon which Plaintiffs rest their claims, namely the letters' failure to state the amounts owed and Jon Hawks's lack of meaningful involvement in the collection of Plaintiffs' debts, arise from the same course of conduct and give rise to the same legal and remedial theories as required by the rule. This typicality is not altered by differing motives that class members may have had when acquiring their debts or by differing levels or types of damages. Plaintiffs have charged violations of the FDCPA based on practices not special or unique to themselves and have made a showing that a significant number of other members of the class have been similarly affected by the same practices. *See Donaldson v. Pillsbury Co.*, 554 F.2d 825, 831 (8th Cir. 1977) ("When the claim arises out of the same legal or remedial theory, the presence of factual variation is normally not sufficient to preclude class action treatment."); *DeBoer*, 64 F.3d at 1175; *Bryant*, 2000 U.S. Dist. LEXIS 16539, *22 ("Typicality is inherent ... in that 'each class member was subjected to the same alleged FDCPA violation ... when they were sent the dunning letter.'" (citation omitted)). Thus, the Court finds that Plaintiffs satisfy Rule 23(a)(3).

### 4. Adequacy

Rule 23(a)(4) requires that "representative parties will fairly and adequately pro-

tect the interest of the class." Fed.R.Civ.P. 23(a)(4). "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562–3. When determining adequacy, a Court must ascertain whether the proposed class representatives have "a sufficient incentive to represent the class members." *In re Milk Products Antitrust Litig.*, 195 F.3d at 437. "A named plaintiff who lacks the desire to 'vigorously pursue' the interests of potential class members is not a fair and adequate representative of the class." *Id.* (citing *Darms v. McCulloch Oil Corp.*, 720 F.2d 490, 493 (8th Cir.1983)). For the reasons explained below, the Court will not certify the proposed class, because, *inter alia*, Plaintiffs are not adequate class representatives.

Sonmore and Rodine allege that Defendants Hawks' debt collection letters violate the FDCPA. They share the class's interest in pursuing this claim and seem to have sufficiently qualified counsel.[4] Thus, they satisfy some of the rule's criteria. However, it is not sufficient under the rule for Plaintiffs' counsel to be adequate, Plaintiffs must also satisfy the Court that they are themselves adequate representatives of the proposed class.

The Court queries the sufficiency of Plaintiffs' incentives to adequately and vigorously represent the class. Under the FDCPA, the maximum amount that each named plaintiff in a class action may recover is $1,000, 15 U.S.C. § 1692k(a)(2)(B)(i), which is the same maximum amount of money the class representatives may recover by pursuing their cases individually, § 1692k(a)(2)(A). Thus, having succeeded on their summary judgment motion, Sonmore and Rodine are in a position to immediately recover the very same amount of statutory damages that they may recover if they were to pursue the action as representatives of a class. The Court has serious reservations regarding whether Plaintiffs, who respectively had insufficient funds to cover two dollar and thirty dollar checks, have sufficient incentives to competently and vigorously pursue the interests of the class, and dedicate the substantial time and resources that would entail, when they may receive the same amount of statutory damages individually and immediately. The Court is concerned that Plaintiffs' interests and goals may diverge from those of the class, which could be unfair to the other members of the class. *See generally Wright*, 524 F.2d at 1062; *Beckmann*, 192 F.R.D. at 614. Thus, the Court finds Plaintiffs inadequate because, *inter alia*, there are legitimate reasons to question the sufficiency of their incentives to represent class members and vigorously pursue class members' interests. *See In re Milk Products Antitrust Litig.*, 195 F.3d at 437; *Darms v. McCulloch Oil Corp.*, 720 F.2d 490 (8th Cir.1983) (affirming denial of class certification when "the record at least raised a question as to the desire … of the named plaintiffs to vigorously pursue the interests of 2,000 potential class members").

Additionally, the Court is concerned that Plaintiffs have not proven themselves adequately responsible to represent a class of approximately 20,000 persons. Both Plaintiffs wrote bad checks. Plaintiffs financial responsibility has at least "some remote relevance" to their responsibility as a whole. *Blair v. Equifax Check Servs., Inc.*, No. 97 C 8913, 1999 WL 116225, *3 (N.D.Ill. Feb.26, 1999). Although the Court may not have found this fact alone to be sufficient to defeat class certification, taken in combination with the Court's other concerns, the Court finds it would be unwise to allow Plaintiffs to represent other class members.

---

4. Defendants Hawks present several additional arguments regarding the inadequacy of Plaintiffs as class representatives, which the Court finds to be without merit. For example, Defendants Hawks argue that Plaintiffs lack the resources to finance their lawsuit. This argument is groundless because class counsel has stipulated that they are advancing the costs of the litigation contingent on the outcome. *See In re Workers' Comp.*, 130 F.R.D. 99, 107–08 (D.Minn.1990); *In re SciMed Life Sec. Litig.*, Civ. No. 3–91–575, 1992 WL 413867, *4 (D.Minn. Nov.20, 1992); *Blair v. Equifax Check Servs., Inc.*, No. 97 C 8913, 1999 WL 116225, *3 (N.D.Ill. Feb.26, 1999).

## C. Federal Rule of Civil Procedure 23(b)

To succeed in a motion for class certification, Plaintiffs must satisfy one of the three subsections of Federal Rule of Civil Procedure 23(b). *See Paxton,* 688 F.2d at 563. Rule 23(b)'s requirements are more arduous than Rule 23(a). *See In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.,* 201 F.R.D. 456, 459–60. Plaintiffs seek to certify the class under Rule 23(b)(3). This rule provides that an action may be maintained as a class action if, in addition to satisfying Rule 23(a)'s requirements, the Court finds that two additional requirements are met: "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3); *see also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Rule 23(b)(3) class actions bind all class members except those who affirmatively elect to be excluded. This rule permits class action treatment in situations where it is not clearly called for, as with Rule 23(b)(1) and (b)(2) situations, but is nevertheless "convenient and desirable." *Amchem,* 521 U.S. at 615, 117 S.Ct. 2231; *Beckmann,* 192 F.R.D. at 615. By adding the "predominance" and "superiority" requirements, Rule 23(b)(3) class actions are intended to "achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about undesirable results." *Amchem,* 521 U.S. at 615, 117 S.Ct. 2231 (quoting the Advisory Committee's Notes on Fed.R.Civ.P. 23). These provisions invite the Court to take a "close look" at a case before accepting it as a class action. *Id.*

The rule lists several matters that are among those pertinent to a court's "close look" at predominance and whether a class action is the superior method of proceeding, as follows:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3); *see also Amchem,* 521 U.S. at 615–16, 117 S.Ct. 2231 (noting that the list is nonexhaustive); *In re Workers' Comp.,* 130 F.R.D. at 110.

### 1. Predominance

■ Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623, 117 S.Ct. 2231; *Parkhill,* 188 F.R.D. at 340; *Brancheau v. Residential Mortgage Group, Inc.,* 177 F.R.D. 655, 660 (D.Minn.1997). The requirement is satisfied "when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *In re Potash Antitrust Litig.,* 159 F.R.D. 682, 693 (D.Minn.1995) (citations omitted); *Glenn,* 203 F.R.D. 425, 431. The existence of individual questions, such as damages, does not necessarily preclude satisfaction of Rule 23(b)(3)'s predominance requirement. *See In re Workers' Comp.,* 130 F.R.D. at 108.

■ It is readily apparent in this action that determining the propriety of Defendants Hawks' form letter and Jon Hawks' standard procedures for sending that form letter will predominate over any questions affecting only individual class members. *See Nance v. Lawrence Friedman, P.C.,* No. 98 C 6720, 1999 WL 966444, *1 (N.D.Ill. Oct.19, 1999). Jon Hawks's course of conduct with respect to his involvement in the mass mailing of debt collection letters is accentuated by uniformity and, thus, any individualized claim pertaining to whether he acted as a lawyer in a meaningful way with respect to a given debt is minimized. The issues involved are common to all class members, thus the Court finds that Plaintiffs have satisfied Rule 23(b)(3)'s predominance criteria.

## 2. Superiority

There is no bedrock standard upon which a Court determines that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3); *see also Brancheau*, 177 F.R.D. at 660. Upon consideration of Rule 23(b)(3)'s nonexhaustive list of pertinent factors, however, the Court will deny Plaintiffs' motion for class certification because class action treatment is not a superior method for adjudicating the proposed class members' claims. Factors that weighed particularly heavy in the Courts determination in this regard include 23(b)(3)(A) and (D). Thus, they are discussed below.

### (i) Rule 23(b)(3)(A)

Rule 23(b)(3)(A) invites a court to evaluate "the interest of members of the class in individually controlling the prosecution or defense of separate actions." Fed. R.Civ.P. 23(b)(3)(A). In setting out Rule 23(b)(3)'s factors for a court to consider, it was "anticipated that in each case, courts would 'consider the interests of individual members of the class in controlling their own litigations.'" *Amchem*, 521 U.S. at 616, 117 S.Ct. 2231 (citation omitted). Defendants Hawks argue, and the Court agrees, that class treatment would be detrimental to absent class members because it would substantially limit their recovery.

A debt collector who violates the FDCPA is liable to a debtor plaintiff for statutory damages in an amount not to exceed $1,000. *See* 15 U.S.C. § 1692k(a)(2)(A). When a suit is maintained as a class action, however, absent class members may only be awarded statutory damages equaling "such amount as the court may allow ... without regard to a minimum individual recovery, not to exceed the lessor of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k(a)(2)(B)(ii).

Plaintiffs and Defendants Hawks offer conflicting arguments regarding Defendants Hawks' net worth. Defendants Hawks claim a negative net worth, while Plaintiffs assert their net worth is substantially higher. The actual net worth of Defendants Hawks is not determinative in this matter, because the FDCPA places a $500,000 cap on class recovery. Based on Plaintiffs' definition of the estimated class, there would be approximately 20,000 absent class members. Thus, if $500,000 is less than one percent of Defendants Hawks' net worth, than each absent class member stands to recover a maximum of twenty-five dollars. Such an award is shockingly low when compared to the statutory damages of up to $1,000 that each class member may be eligible to receive in an individual suit. *See Lyles v. Rosenfeld Attorney Network*, No. 1:99CV322–D–A, 2000 WL 798824, *6 (N.D.Miss. May 17, 2000).

Additionally, it is virtually certain that Defendants Hawks' actual net worth is something far less than $50 million, which makes one percent of their net worth the maximum amount available to the class. Thus, absent class members' damages would be even more paltry than twenty-five dollars in this case. For example, although Plaintiffs assert that Defendants Hawks failed to produce accurate net worth information during discovery, they estimate that Jon Hawks' net worth is $300,000. Under this scenario, the entire class would be entitled to, at most, $3,000 from Jon Hawks. Thus, each of the estimated 20,000 persons would be eligible for a maximum recovery of fifteen cents.

The maximum potential award of statutory damages if this action were maintained as a class action is "clearly relevant" to consideration of Rule 23(b)(3)(A). *Bryant*, 2000 U.S. Dist. LEXIS 16539, *27. The FDCPA's cap on class action damages, combined with the large number of putative class members, causes an unacceptably large discrepancy in the amount of available damages. *See Lyles*, 2000 WL 798824, *6. By certifying the class, the court would ensure a de minimis monetary recovery for class members, which constitutes a substantial reduction in what class members may otherwise be entitled by pursuing their claims individually. Because plaintiffs pursing an action individually are eligible to recover a maximum of $1,000, while absent class members in this case are eligible for a maximum of merely twenty-five dollars, the Court finds that the interest of class members in individually controlling the prosecution of their claims prevails over any

efficiency objectives that may be achieved through management of the litigation as a class action.[5] Thus, Plaintiffs have failed to establish that a class action is a superior method for adjudicating claims regarding Defendants Hawks' conduct and form letter.

### (ii) Rule 23(b)(3)(D)

■ Inquiry into the superiority of class action treatment under Rule 23(b)(3) also requires a court to consider the manageability of such treatment. The Court is mindful that dismissal for management reasons is not favored. *See In re Workers' Comp.*, 130 F.R.D. at 110. Under Rule 23(b)(3)(D), however, "[m]anageability is a real issue," *In re Workers' Comp.*, 130 F.R.D. at 110, and the Court is unconvinced that management of a class action in this situation is a tenable, not to mention a "superior," method of litigating the prospective class members' claims. *See Brancheau*, 177 F.R.D. at 661 (noting that "the determination of superiority often turns on the manageability, and the efficiency, of the proposed class action"). Thus, taken in the context of the Court's other concerns about superiority and findings regarding adequacy, the Court is persuaded that class action treatment is not a superior method for adjudicating these potential claims.

Unfortunately, this Court's experience with class actions involving class members whose financial circumstances make it difficult to ascertain their identities or their present whereabouts convinces this Court that a class action is not a superior vehicle to provide an appropriate remedy in this situation. The Court anticipates tremendous difficulty and only limited success in notifying perspective class members of the class action and their rights to opt out and recover a potentially greater damage award under the FDCPA if they proceed individually. The Court also anticipates difficulty in ensuring that class members who do not opt out actually receive their damages awards. It is the Courts experience that the benefits of such a class action would inure, if at all, to class counsel and the designated recipient of class

funds that the Court is unable to distribute to class members. Thus, the Court finds that presentation of individualized claims in separate proceedings would be superior to the vehicle of a class action.

In sum, having closely examined the Rule 23 factors that Plaintiffs must satisfy, the Court finds that the proposed class should not be certified, and the Court will deny Plaintiffs' motion.

\* \* \* \* \* \*

Upon its review of the files, motions and proceedings herein, the Court concludes that Plaintiffs have failed to satisfy the requirements of Fed.R.Civ.P. 23. Therefore, it is hereby ORDERED that:

1. Plaintiffs' motion for class certification is DENIED.

---

5. Plaintiffs argue that class members' right to opt out of the class action obviates the Courts concern about limiting their recovery through class adjudication. The Court is unconvinced by this argument for many reasons, including many of the same concerns discussed below pertaining to manageability.